**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Insurity LLC,<br>       Plaintiff,<br><br> vs.<br><br>Insurity Street LLC,<br><br>       Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>Jury Trial Requested |

Plaintiff Insurity LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Defendant Insurity Street LLC ("Defendant") and alleges as follows:

**PARTIES**

1. Plaintiff Insurity LLC is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 120 Huyshope Avenue, Suite 300, Hartford, Connecticut 06106.

2. Upon information and belief, Defendant is a limited liability company organized and existing under the laws of the State of Pennsylvania and having a principal place of business at 98 Charlotte Avenue, Southampton, Pennsylvania 18966.

**JURISDICTION AND VENUE**

3. This Court has original jurisdiction over the federal Lanham Act claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b).

4. This Court also has supplemental jurisdiction over Plaintiff's claims arising under common law or state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, and they arise from a

common nucleus of operative fact and are based on the same events, transactions, and occurrences as the federal claims.

5. This Court has general personal jurisdiction over Defendant due to its residence and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant due to the nature and quality of its actions toward the state in which this Court is located. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of specific personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

6. Venue in this judicial district is proper for these claims pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### Plaintiff's Trademarks and Business

7. Founded in 1985, Plaintiff is a nationally recognized leader in insurance technology that provides cloud-native, configurable software products to insurance carriers, brokers, and managing general agents ("MGAs").

8. Plaintiff delivers software as a service ("SAAS") solutions that support a large segment of the insurance market, including property and casualty insurance ("P&C") carriers in commercial, personal, workers' compensation, marine cargo, and specialty lines of business. Plaintiff's insurance software products are designed to handle a wide range of business operations with industry-leading efficiency, including billing, claim processing, administration, compliance and policy processing, data compilation and analysis, and management and analytics.

9. Plaintiff's core offering, the "Insurity Platform," is an end-to-end system that handles insurance policy administration, billing, claims management, and analytics for property and casualty ("P&C") insurance carriers, MGAs, and brokers, allowing them to quickly respond to market opportunities through automation and advanced analytics.

10. Through its best-in-class digital platform, unrivaled industry experience, and robust analytics offerings, Plaintiff is uniquely positioned to deliver exceptional value, empowering its customers to focus on their core businesses, optimize their operations, and provide superior policyholder experiences. Plaintiff partners with more than twenty-five system integrators to implement these industry-leading systems for eighteen of the world's leading insurers.

11. Plaintiff is the largest cloud software provider in the P&C insurance market: its products and services are trusted by more than five hundred P&C insurance carriers, including twenty-two of the top twenty-five P&C carriers in the United States, and seven of the top ten MGAs.

12. Plaintiff completed over fifty go-lives in the past year alone and delivers speed and value to its over five-hundred carriers, MGA, self-insured, and risk pool customers.

13. Plaintiff markets its insurance software throughout the United States and the world, making it one of the most well-known and trusted names in the industry.

14. Plaintiff's deep industry penetration and decades-long success have earned it numerous awards, including being named to the IDC FinTech Rankings Top 50 solution provider list for 2024 and the Top 100 list for 2025.

15. Plaintiff's brand and name have, therefore, become synonymous with innovative insurance solutions.

16. On February 26, 2013, the United States Patent and Trademark Office granted Plaintiff a valid and subsisting federal trademark registration for the INSURITY service mark, U.S. Reg. No. 4296336, and on the Principal Register. A true and accurate copy of the Registration Certificate for the INSURITY Mark is attached hereto as **Exhibit A** (the "Registration Certificate"). Collectively, Plaintiff's registered and common law service mark rights are referred to as the "INSURITY Mark."

17. Subsequent to registration, the registration for INSURITY became incontestable, pursuant to 15 U.S.C. § 1065.

18. As such, the Registration Certificate constitutes conclusive evidence of the validity and registration of the INSURITY service mark, Plaintiff's ownership thereof, and Plaintiff's exclusive right to use it in commerce, pursuant to 15 U.S.C. § 1115(b).

19. Also due to its incontestable status, the INSURITY service mark is conclusively presumed to be distinctive, pursuant to 15 U.S.C. § 1115(b).

20. Plaintiff has continuously used the INSURITY Mark in commerce since at least as early as December of 2011 in connection with its insurance technology products and services.

21. The INSURITY Mark is, therefore, central to the company's identity and brand equity.

22. Plaintiff uses the INSURITY Mark prominently across its website, marketing campaigns, partnerships, and customer communications.

23. As a result of extensive advertising, industry acclaim, media coverage, and word-of-mouth reputation—and Plaintiff's substantial time, effort, money, and resources spent developing this reputation—the INSURITY Mark enjoys substantial recognition and goodwill across the insurance technology sector. In fact, the INSURITY Mark is widely recognized by

insurance carriers, MGAs and brokers, and the general U.S. public as indicating the source of Plaintiff's goods and services.

### Defendant Insurity Street

24. Seemingly founded less than two years ago, Defendant Insurity Street LLC is, upon information and belief, an insurance agency that sells life, accident, disability, health, and long-term care insurance policies.

25. Defendant offers, markets, and sells its insurance products under the Insurity Street mark via its website, https://www.insuritystreet.com, and other channels.

26. Upon information and belief, Defendant has not sought federal trademark protection for its "Insurity Street" designation (the "Infringing Mark").

### Confusion and Defendant's Infringement

27. Defendant uses the name "Insurity Street"—a nearly identical phonetic and visual approximation of the INSURITY Mark.

28. Indeed, the dominant portions of each mark—INSURITY—are identical.

29. The only characteristic that differs between the Infringing Mark and the INSURITY Mark is the addition of the generic word, "Street," making them nearly indistinguishable in spoken language and easily confused in casual writing, online searches, and digital media.

30. The likelihood of confusion is exacerbated by Defendant's adoption of similar aesthetic conventions that mirror Plaintiff's, including modern minimalist designs, sans-serif typefaces, and the use of all lowercase letters, as shown below.



31. The similar marketing aesthetics reinforce the impression of association or affiliation.

32. Defendant and Plaintiff operate in the same general industry, namely, insurance-related services. Moreover, both parties market via similar channels of trade, with each maintaining public-facing websites to promote their insurance services. Given this shared industry and overlapping marketing channels, consumers and industry professionals are likely to encounter both companies in similar contexts, increasing the risk of confusion or mistaken affiliation.

33. Though their primary consumer targets may differ somewhat, because both Plaintiff and Defendant are in the broader insurance market and operate under the identical INSURITY Mark, consumers of Plaintiff's insurance solutions are exceedingly likely to assume an affiliation, association, or other connection between Defendant and Plaintiff. Moreover, persons who are customers of Plaintiff are also potential customers of Defendant's insurance services.

34. The design, domain name, layout, and substance of Defendant's website are all substantially similar to that of Plaintiff's website.

35. For example, Plaintiff's website, **https://insurity.com**, advertises its "Featured Products," including its Insurity Analytics, Insurity Platform, and Insurity Premium Audit. Similarly, Defendant's website, **https://www.insuritystreet.com**, advertises "a wide range of insurance products, including Life, Disability and Long-Term Care."

36. Additionally, Defendant's website focuses on its "years of consulting experience and access to dozens of highly rated insurance carriers," piggybacking off of Plaintiff's "20+ years of experience" mentioned on its website and its advertised partnerships with nationally recognized insurance carriers, like Chubb and AIG.

37. Furthermore, Defendant frames its insurance products as "Solutions"—exactly the same term Plaintiff employs throughout its website and other marketing materials to describe its insurance software products. For example:



38. As shown above, Defendant's website even displays the INSURITY Mark in isolation *without* the word "Street"—the only otherwise distinguishing trait of the still infringing mark, "Insurity Street."

39. Defendant's products and services identified on its website—insurance products—are functionally adjacent and in proximity to Plaintiff's offerings in the insurance industry. They both occupy the insurance industry and are exposed to the same consumers.

40. The convergence of Defendant's Infringing Mark, services, brand image, and marketing creates an environment in which consumers are likely to be confused about the source or affiliation of services offered under Defendant's name.

41. In fact, the similarities in the names have already caused consumer confusion.

- For instance, a client of Defendant posted a review referencing the business incorrectly as "Insurity." *See* https://www.chamberofcommerce.com/business-directory/pennsylvania/southampton/insurance-broker/2025880374-insurity-street. She wrote: "*I was referred to **Insurity** by a highly respected financial advisor, and they did not disappoint!*" The review appears on Defendant's profile, indicating she meant Insurity Street, but used "Insurity" as the name. This suggests this customer believed Defendant was Plaintiff, or could not distinguish between the two.

- Similarly, the website Trustburn.com, a reviews aggregator, contains multiple customer reviews under "Insurity Inc" (Plaintiff's former entity) that sound like consumer insurance experiences of the type Defendant offers and which refer to the company as "Insurity Inc." *See* https://trustburn.com/reviews/insurity-inc.

**Defendant's Willful Infringement**

42. In or around April 2024, Plaintiff became aware that Defendant was infringing on the INSURITY Mark by advertising, promoting, offering, selling, and providing insurance industry goods and services under the name "Insurity Street."

43. Plaintiff promptly sent a cease-and-desist letter to Defendant on April 10, 2024, notifying Defendant of Plaintiff's federal trademark rights in the INSURITY Mark, explaining that Defendant's use of the Infringing Mark created a likelihood of confusion, and demanding that Defendant cease all use of the Infringing Mark.

44. In response, Defendant stated it would not cease use of the Infringing Mark.

45. Despite Defendant's initial refusal to comply with Plaintiff's demands, after Plaintiff persisted in its enforcement efforts, Defendant eventually acknowledged by email on September 13, 2024, that the INSURITY Mark and the Infringing Mark share "some similarity."

46. In or around December 2024, Defendant finally agreed to completely rebrand itself and cease any and all use of the INSURITY Mark within six to nine months.

47. That six- to nine-month performance period has now elapsed. Defendant has yet to rebrand itself and continues to use the INSURITY Mark in commerce.

48. Defendant's continued use of the Infringing Mark after receiving explicit notice of Plaintiff's rights constitutes willful and deliberate infringement.

49. Defendant's actions reflect an intentional attempt to trade on the goodwill, recognition, and brand equity that Plaintiff has built over more than a decade of nationwide commercial use of the INSURITY Mark.

50. Defendant's conduct has caused, and continues to cause, irreparable harm to Plaintiff's business, reputation, and trademark, and has created a substantial likelihood of confusion, deception, and mistake in the marketplace.

51. As such, Defendant's acts of infringement and unfair competition are knowing, intentional, and willful.

## COUNT ONE
## REGISTERED TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

52. Plaintiff re-alleges and re-avers paragraphs 1 through 51 as though fully set forth herein.

50. Plaintiff is the owner of a valid, incontestable, and protectable federal trademark registration for INSURITY.

51. The INSURITY service mark is highly distinctive in the insurance industry.

52. Defendant's Infringing Mark is confusingly similar, if not legally identical to the Plaintiff's registered service mark for the reasons described herein.

53. Defendant's use of the Infringing Mark is performed without the consent of Plaintiff and is unauthorized.

54. There is no question as to priority. Defendant's use of the Infringing Mark began after Plaintiff's incontestable INSURITY service mark was adopted and used, and after the filing date of U.S. Reg. No. 4296336.

55. Defendant's unauthorized use of the Infringing Mark in commerce, including advertising, promotional materials, on its website, and in association with its products and/or services, is likely to confuse or deceive consumers and industry partners into believing that

Defendant is providing products or services that are authorized, licensed, sponsored by, or otherwise associated with Plaintiff.

56. Defendant's unauthorized use of the Infringing Mark has already caused actual confusion.

57. Defendant's use of the Infringing Mark on or in connection with Defendant's products or services is likely to cause confusion, mistake, or deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's products or services by Plaintiff.

58. Defendant's conduct, as alleged herein, constitutes trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

59. Defendant knew of and acknowledged Plaintiff's exclusive and federally protected rights in and to the INSURITY service mark.

60. Despite this, Defendant has failed to discontinue the activities complained of herein, despite having actual notice that these activities infringe Plaintiff's exclusive and federally protected rights.

61. Accordingly, Defendant's conduct complained of herein was and continues to be intentional, knowing, and willful.

62. As a proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, reputation, profits, and strength of its INSURITY service mark.

63. The injury to Plaintiff is ongoing, continuous, and irreparable.

64. A monetary award of damages alone cannot fully compensate Plaintiff for its damages caused by Defendant.

65. Plaintiff has no adequate remedy at law.

66. Plaintiff is entitled to a temporary and permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

### COUNT TWO
### FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

67. Plaintiff re-alleges and re-avers paragraphs 1 through 66 as though fully set forth herein.

68. The INSURITY Mark is a distinctive mark and has become associated with Plaintiff and, thus, exclusively identifies its business and software solutions and services.

69. Because of Defendant's wrongful use of the Infringing Mark, consumers are deceptively led to believe that Defendant's services originate with, are sponsored by, or otherwise approved by Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

70. In fact, Defendant's unauthorized use of the Infringing Mark has already caused actual confusion.

71. The acts and conduct by Defendant described herein constitute false designation of origin, and passing off in connection with services advertised and rendered in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72. As a proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, reputation, profits, and strength of the INSURITY Mark.

73. The injury to Plaintiff is ongoing, continuous and irreparable.

74. A monetary award of damages alone cannot fully compensate Plaintiff for its damages caused by Defendant.

75. Plaintiff has no adequate remedy at law.

76. Plaintiff is entitled to a temporary and permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees

## COUNT THREE
## FEDERAL UNFAIR COMPETITION
## (15 U.S.C. § 1125(a))

77. Plaintiff re-alleges and re-avers paragraphs 1 through 76 as though fully set forth herein.

78. Defendant's unauthorized use of the Infringing Mark in commerce, as alleged herein, is likely to confuse and deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's nearly identical mark and closely related services, and is likely to cause consumers to believe, contrary to fact, that Defendant's services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with, or sponsored by Plaintiff.

79. In fact, Defendant's unauthorized use of the Infringing Mark has already caused actual confusion.

80. Defendant's unauthorized use in commerce of the Infringing Mark, as alleged herein, constitutes use of a word, term, name, symbol or device, or a false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

81. Defendant's conduct as alleged herein is willful, is intended to, and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

82. Defendant's conduct, as alleged herein, constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83. Defendant's conduct, as alleged herein, is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court.

84. Plaintiff has no adequate remedy at law.

85. Plaintiff is entitled to a temporary and permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT FOUR
## COMMON LAW UNFAIR COMPETITION

86. Plaintiff re-alleges and re-avers paragraphs 1 through 85 as though fully set forth herein.

87. Plaintiff is the senior owner of a valid and protectable common law trademark right in the INSURITY Mark.

88. Defendant's unauthorized use of the Infringing Mark, and the other distinctive words, symbols, color schemes, and designs through which Defendant presents its products and services to the market constitutes wrongful and unfair business practices and marketplace bad faith, resulting in inaccurate representations to the consuming public that the Infringing Mark used by Defendant for its services and products somehow is authorized by or affiliated with Plaintiff.

89. Defendant so acted for its own financial benefit in disregard to the harm being caused to Plaintiff.

90. Defendant's acts described herein constitute unfair competition in violation of the common law of the State of Pennsylvania.

91. Defendant's acts described herein are likely to cause confusion, mistake, and deceit as to affiliation, connection, or association of Defendant with Plaintiff and as the origin, sponsorship, or approval of Defendant's unauthorized products by Plaintiff.

92. Plaintiff has been damaged by Defendant's acts of common law unfair competition.

93. Defendant's actions described herein have caused, and will continue to cause, Plaintiff to suffer irreparable harm unless enjoined by this Court. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment in its favor and against Defendant as follows:

1) Finding Defendant liable for infringement of Plaintiff's trademark rights;
2) For temporary and permanent injunctive relief enjoining Defendant and its respective officers, employees, and agents, and all persons or entities in active concert or participation with Defendant, from:
   a. using, displaying, advertising, or selling their products and services under the Infringing Mark, including all formative variations thereof, and any mark

confusingly similar to the INSURITY Mark, including all formative variations thereof;

    b. diluting, blurring, passing off, or falsely designating the origin of the INSURITY Mark and from injuring Plaintiff's goodwill and reputation;

    c. doing any other act or thing likely to induce the belief that Defendant's business, website, products, or services are in any way connected with, sponsored, affiliated, licensed, or endorsed by Plaintiff; or

    d. using the INSURITY Mark, or derivations thereof, including the Infringing Mark, for goods or services, or on the internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation with Plaintiff;

3) Ordering that Defendant, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiff within thirty (30) days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the permanent injunction;

4) Ordering Defendant to destroy all materials bearing the Infringing Mark, including boxes, packaging, stationery, letterhead, business forms, business cards, statements, invoices, signage, brochures, pamphlets, and advertising and marketing materials bearing the Infringing Mark in accordance with 15 U.S.C. § 1118;

5) Ordering Defendant to account for all profits derived from Defendant's unlawful use of the Infringing Mark in accordance with 15 U.S.C. § 1117(a);

6) Ordering Defendant to pay Plaintiff monetary relief under 15 U.S.C. § 1117(a) in an amount equal to Defendant's profits plus damages sustained by Plaintiff as a result of Defendant's wrongful actions;

7) Ordering Defendant to pay Plaintiff three times Defendant's profits made as a result of Defendant's wrongful actions or three times Plaintiff's damages, whichever is greater;

8) Finding that this case is exceptional pursuant to 15 U.S.C. §§ 1117(a), 1117(b) and 1125(c), and trebling any damages awarded to Plaintiff due to Defendant's willful and intentional acts of trademark infringement and unfair competition; awarding exemplary damages for Defendant's willful and intentional acts; and reimbursing Plaintiff for its reasonable attorneys' fees;

9) An award of punitive damages; and

10) Finding that Plaintiff is entitled to recover its costs of Court.

11) Such other and further relief this Court deems just and proper.

12)

Dated: January 16, 2026                    Respectfully submitted,

*/s/ Tiffany M. Alexander*

Tiffany M. Alexander, Esquire
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1000 Westlakes Drive
Suite 275
Berwyn, PA 19312
Telephone: (610) 943-5410
Tiffany.alexander@nelsonmullins.com

John C. McElwaine (*pro hac vice forthcoming*)
Merritt G. Abney (*pro hac vice forthcoming*)
John P. Bozeman (*pro hac vice forthcoming*)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**

Liberty Center
151 Meeting Street
Suite 600
Charleston, SC 29401
Telephone: (843)-534-4302
john.mcelwaine@nelsonmullins.com
merritt.abney@nelsonmullins.com
john.bozeman@nelsonmullins.com

*Counsel for Plaintiff Insurity LLC*